| 59 | 425 |
|---|---|
| 31 SC | 117 |

# The Commonwealth *ex rel.* Lowry *versus* Reed.

1. Under a habeas corpus an order on the respondent to surrender the body of a child in his possession to her guardian was endorsed on the writ. *Held* to be a sufficient order.

2. After making the order the guardian agreed that the child might remain a short time with the respondent. *Held*, that this was not an abandonment of the proceeding. Private parties to the habeas corpus could not bargain away the rights of the infant.

3. The Commonwealth, *parens patriæ*, the legal plaintiff, will not permit the judgment of her tribunals in such cases to be disregarded or set aside without her consent.

4. The respondent refusing to obey the order, a rule for an attachment against him was granted, and whilst it was pending a writ of assistance was issued: this did not interfere with the right to proceed by the attachment to enforce the order.

5. The law regards the husband as the head of his household—himself and his wife one—and him the responsible one as to all civil requirements. He cannot shelter himself in disobeying process through failure to control his wife or apprehensions of her, or the effect of the execution of process where her feelings might be concerned.

6. The commitment under the attachment was not for contempt, but an execution of the attachment.

7. Under the 2d section of Act of June 16th 1836, commitment for contempt extends only to contempts committed in the presence of the court.

8. An attachment requires the recusant party to be brought before the court, and if there be no sufficient ground for his discharge, it is the duty of the court to order his commitment until obedience be obtained.

November 7th 1868. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ. Read, J., absent.

[Commonwealth *v.* Reed.]

This was an *habeas corpus ad subjiciendum*, issued out of the Supreme Court, at the relation of Alexander Lowry, against Daniel J. Reed, sheriff of Armstrong county.

At the instance of the guardian of Vermadille Funk, a minor, the Hon. Joseph Buffington, President Judge of the Court of Common Pleas of Armstrong county, awarded a writ of habeas corpus, commanding Lowry, the relator in the present proceeding, to produce the minor; after hearing, Judge Buffington made an order that Lowry should deliver the minor to her guardian. For refusing to obey the order an attachment was issued against him, under which he was taken into the custody of Reed as sheriff. To relieve Lowry from that custody he applied for this writ of habeas corpus.

*E. S. Golden* and *D. Barclay* were for the relator.

*G. C. Orr* was for the respondent.

The facts of the case necessary to its understanding (no paper-books having been furnished) will be found in the opinion of the court, which was delivered, November 17th 1868, by

THOMPSON, C. J.—The petition of the relator in this case was in the usual form, setting forth in general terms that he was illegally restrained of his liberty by the respondent, the sheriff of Armstrong county—not by reason or on account of any criminal or supposed criminal matter, and prayed that a habeas corpus might issue to inquire into the cause of his detention. At the same time the counsel for the relator informed the court, that he was in custody on proceedings in an attachment issued against him for refusing to obey the order of the Hon. Joseph Buffington, President Judge of the Court of Common Pleas of said county, made after hearing on a habeas corpus, to surrender and deliver up to her legal guardian, one Vermadille Funk, a minor under the age of fourteen years, then in his custody. Under these circumstances, at the time we awarded the writ of habeas corpus to bring up the body of the relator, we directed a certiorari to bring up the proceedings in the case, under which he had been committed, returnable at the same time with the habeas corpus. We have, therefore, before us the sheriff's return, that he detains the prisoner by virtue of a commitment under an attachment issued by the Court of Common Pleas of Armstrong county as for a contempt, and also, the proceedings returned on the certiorari resulting in the commitment.

On the argument in this court, it was alleged by the counsel for the relator, that no order had been made on him, on the hearing of the habeas corpus before Judge Buffington, to surrender the body of Vermadille Funk, to her guardian. This is an error.

[Commonwealth *v.* Reed.]

The order appears distinctly endorsed on the writ, and this was sufficient.

It was also alleged that it appears by the docket-entries, that the person of the infant was surrendered. There is a clerical error so palpable on the face of the copy of the docket-entries, which must have led to this position, that we need say no more than that the docket-entries, properly understood, prove no such fact as is claimed.

A failure of the defendants to surrender the child, pursuant to the order of the judge, and the agreement of its guardian with the relator and his wife, that the child might remain a couple or three weeks with them before being surrendered to him, being shown by the guardian, and that he had made efforts to get possession of the child, by going to the residence of the relator and demanding it, and that it was not there, and that the relator refused to give information where it was, a rule to show cause why an attachment should not issue against him for disobedience to the order made in the case, was granted. The rule was regularly served and the relator answered, setting up a gift of the child by its mother on her death-bed to his wife, its grandmother, and some other matters only proper to be heard on the hearing of the habeas corpus, and he proceeded in substance to allege, that the child was in the custody of its grandmother, by virtue of the gift mentioned, and that he had no legal right to use coercive measures to compel her to give it up, and that this would be required to enable him to give it up, and that such measures would inevitably result in serious family difficulties; that when the sheriff or deputy was at his house with a writ of assistance, he was absent with the child out of the county, at Oil Creek, in Venango county, and that he had no knowledge of their intention to come on that occasion, and that he has not now, nor had he at any time, the custody and control of the child; and in conclusion he denied the jurisdiction of the court in the premises, protesting at the same time, that he meant no contempt towards the court in refusing obedience to its orders in anything he had done.

While this rule for an attachment was pending, a writ of assistance was granted by the court on the application of the guardian, to which there was a return, that the infant, Vermadille Funk, could not be found, and that on reading it to the relator he declared that his mind remained unchanged, and that he would not surrender the child.

The court, under these circumstances, considering the answer to the rule to show cause why an attachment should not issue, as insufficient, did on the 3d of March last commit him to the jail of Armstrong county for disobedience to the order for surrendering up the infant child, named in the habeas corpus and order, and

[Commonwealth *v.* Reed.]

persisting in the same, to be held in custody until said order should be complied with, or the further order of the court.

It is now argued that the agreement referred to, after the order made by the judge on the habeas corpus, that the child might remain a short time with the relator and his wife before being delivered to its guardian on the order of the judge, was an abandonment of that proceeding, and the order made is not therefore enforceable by process. This is a great mistake. The private parties to the habeas corpus could not bargain away the rights of the infant, incapable by reason of its tender age to consent, by any arrangement. While the temporary arrangements for delay in separating the infant from its grandparents was quite proper, on the score of deference for their feelings if fairly carried out, yet the Commonwealth, *parens patriæ*, the legal plaintiff, will not permit the judgment of her tribunals in such cases to be disregarded, or set aside without her consent. Were the doctrine insisted on sanctioned, infants of tender years, taken by process from restraint, and even improper custody, might be continued in it, by the agreement of the parties to the writ of habeas corpus. The court was right in seeing that the order should be enforced. No relinquishment of it, is at all predicable of the agreement in question, which itself resulted from commendable feelings on the part of the guardian.

Nor did the writ of assistance at all interfere with the right to proceed by attachment to enforce the order. Being unproductive of results, and the order remaining unobeyed and disregarded, as its return showed, it was perfectly proper to proceed to allow the process of attachment. This is so obvious that more need not be said as to this objection.

We have carefully examined the preliminary proceedings, the foundation for the attachment issued. They are all regular. The rule to show cause was regularly served, and the relator answered it. The court adjudged the answer insufficient, and with this we fully agree. Omitting to notice allegations in the answer, which were concluded by the order for the surrender of the child, we need only notice that the respondent put his defence or excuse, for refusing obedience to the order, on the ground that the child was exclusively in the custody, and under the control of his wife, its grandmother, and that he could not surrender it without coercive measures, which would greatly disturb his family tranquillity. This was manifestly insufficient. The law regards him as the head of his household; himself and wife one, and he the responsible one, as to all civil requirements. He is the superior in the estimation of the law, howsoever much the fact may be otherwise, and he cannot for a moment shelter himself from responsibility in disobeying process, through a failure to control his wife, or apprehensions of her, or the effect of the execution

of process where her feelings might be concerned. Indeed, this allegation stands badly with the facts stated in the answer. In it he admitted that the child was in his personal custody out of the county, when the officer was in pursuit of it with the writ of assistance. It was not in his wife's custody or under her control then, and this shows that he had its custody when he pleased. Nor does the answer tally well with the return of the officer to the writ of assistance. It appears by that, that when the writ was shown to him he declared he would not surrender the child. He did not then claim that he could not. If the court had been satisfied that the relator really could not surrender it, by means of his wife's custody where he could not reach it, and that he did not connive at such custody, no doubt he would have escaped commitment on the attachment. But this did not appear, and we think the court had solid grounds for granting the attachment, and committing him upon it.

The next thing to be noticed is the power of the court to commit. This was denied on the ground that the commitment was a sentence to imprisonment for contempt. Had this been so, it would have been error; for by the 2d section of the Act of 16th of June 1836, imprisonment extends only to contempts committed in the presence of the court. This case could scarcely be brought under that provision. The error in the position taken is, that the commitment on the attachment was not a sentence for contempt, but an execution of the attachment. The commitment was necessary where its execution, so far as the seizure of the defendant was concerned, had resulted fruitlessly in regard to the matter for which it had issued. An attachment, unlike a ca. sa., requires the recusant party to be brought before the court, and if there be no sufficient ground for his discharge, it is the duty of the court to order his commitment until obedience be obtained. Here the commitment was an execution of the attachment, the court expressly declaring it to be for "remedy for the relator." In Tomes's Appeal, 14 Wright 285, my brother Agnew proves it to be, in civil cases, a civil remedy. Such manifestly was its nature here, and so intended. We think the court did not transcend its power in the least in its proceedings on the attachment. The only way open for the relator to free himself from his unhappy predicament, is by obeying the order of the court in regard to the infant, Vermadille Funk. That she has been spirited away to "parts unknown," is his fault, for he ought to have surrendered her when he had the power; and it certainly is much against him, that it can now be said, that it is not known where she is, and that she has been carried out of the jurisdiction of the court, and out of the knowledge of the community to which she belonged.

For these reasons the discharge of the prisoner Alexander Lowry is refused, and he is remanded to the custody of the sheriff,

[Commonwealth *v.* Reed.]

the keeper of the jail of Armstrong county, and it is ordered that he pay the costs of this proceeding.