# Commonwealth, ex rel., Lieberum, Appellant, v. Lewis.

*Habeas corpus—Imprisonment for contempt of court—Defiance of decree in equity—Transcript of commitment order—Clerical omission—Assistance and sequestration—Acts of July 12, 1842, P. L. 339, and June 16, 1836, P. L. 784, Section 24.*

1. One who asks for a release from custody under a writ of habeas corpus, must present a prima facia case entitling him to such relief, and he fails to do this where his own application, together with the commitment, shows a legal detention.

2. Where in habeas corpus proceedings, instituted to procure the relief from custody of a defendant in an equity suit who had been imprisoned for contempt in failing to comply with a decree of the court, the transcript of the order of commitment presented to the warden, omitted the recital of the facts on which the order was based and merely contained the order of commitment, but where the petition for the writ of habeas corpus showed that relator had been adjudged guilty of contempt of court in failing to obey a decree, the nature of which appeared, so that the petition and transcript taken together showed a legal detention, the technical error in the transcript was not sufficient to entitle the relator to a release.

*Equity—Attachment—Contempt—Act of July 12, 1842, P. L. 339 —June 16, 1836, P. L. 784, Section 23—Imprisonment.*

3. The Act of June 16, 1836, P. L. 784, Section 23, regulating the power of the court to issue attachments and inflict summary punishment for contempt of court, has no relation to attachment to enforce decrees in equity, where the object is not to inflict punishment but to compel the performance of such decrees.

4. The Act of July 12, 1842, P. L. 339, abolishing imprisonment for debt, but expressly excepting from its provisions, proceedings had for contempt to enforce civil remedies, does not affect the powers of a court of equity under the Act of 1836 to enforce decrees by attachment if necessary; the power to enforce their decrees by imprisonment if necessary is incident to the jurisdiction

of courts of equity, without which power a decree would in many cases be useless.

5. An attachment for contempt in refusing to obey a decree in equity is not invalid although other remedies are available.

6. Where a defendant in an equity suit was committed to jail for contempt of court, in refusing to obey a decree requiring him to remove an obstruction from a road, the fact that compliance with the decree might have been secured through writs of assistance and sequestration, did not entitle him to relief in habeas corpus proceedings, and he was remanded to jail until he should comply with the decree or until the court should see fit by some other means to carry its decree into effect.

7. In such case the decree of the court may be effectuated by writs of assistance and sequestration upon application to the court by the proper party.

Argued Oct. 28, 1915.    Habeas corpus, original jurisdiction, Miscellaneous Docket No. 192, in case of Commonwealth of Pennsylvania, ex rel., Christian Lieberum v. Edward Lewis, Warden of Allegheny County Jail. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.

Habeas corpus, orginal jurisdiction.
The opinion of the Supreme Court states the facts.

L. K. Porter, S. G. Porter and Saul Schein, for relator.

Howard W. Douglass and J. Rodgers McCreery, contra.

OPINION BY MR. JUSTICE FRAZER, March 20, 1916 :
A bill in equity was filed in 1912 by various persons against Christian Lieberum, the relator, asking for an injunction to restrain him from continuing to obstruct a certain right of way by maintaining thereon a building which he erected a number of years previous to the instituting of the proceedings. A decree was entered against Lieberum ordering him to remove the building on or before a certain time, and to replace the way in

suitable condition for travel.  This decree was affirmed on appeal to the Superior Court, in Schmidt v. Lieberum, 54 Pa. Superior Ct. 500.  The relator refused to comply, whereupon an attachment was issued, and an order made adjudging him guilty of contempt of court, for which he was committed to the county jail until such time as he should purge himself of the contempt.  Three writs of habeas corpus were subsequently issued by the lower court and each of them on hearing was dismissed, the prisoner still persisting in his refusal to obey the decree, without offering excuse for his conduct, or showing reason why he should not be punished for his open defiance. On October 28, 1915, a petition was presented to this court, and a writ issued to the warden of the jail requiring him to produce the relator before us, and, on October 29, 1915, a decree was entered directing his release from confinement on giving bail to await the further order of the court.

The first contention on part of relator is that the commitment to the county jail was insufficient, in that it failed to show the nature of the contempt for which he was committed.  The order of the court recited in detail the entry of the original decree directing relator to remove his house; the fact that this decree was sustained by the Superior Court; the failure of relator to comply with its terms; the issuing and service of a rule of attachment; the fact that relator duly appeared before the court and refused in open court to comply with the decree; and the resulting order committing him for contempt.  There can be no doubt that the decree in itself was sufficient to show the nature of the offense which formed the basis of the commitment.  The transcript, however, which was presented to the warden of the prison contained merely the concluding order, omitting the recital of the facts on which the order was based. The petition presented to this court for a writ of habeas corpus sets out the fact that relator had been adjudged guilty of obstructing a road or right of way, and had

been ordered to remove the obstruction, and was adjudged guilty of contempt and committed to jail for refusal to obey the decree of the court. Had the order of commitment contained nothing more than appeared on the transcript presented to the warden, there would be merit in relator's contention. But one who asks for a release from custody under a writ of habeas corpus must present a prima facie case entitling him to such relief, and he fails to do this where his own application, together with the commitment, shows a legal detention: Williamson's Case, 26 Pa. 9, 15; Commonwealth v. Bell, 145 Pa. 374. In the latter case it was said (page 386): "It is unnecessary to consider any technical objection to the sufficiency of the sheriff's return to the writ of habeas corpus, because, in his petition for the writ, the relator sets forth, inter alia, the fact that he was adjudged guilty of contempt of court in refusing to testify as a witness in the case above referred to; that for said offense he was sentenced by the court to pay a fine of two hundred dollars and undergo an imprisonment in the common jail of Lawrence County until the tenth day of March, 1891, 'and stand committed to the custody of the sheriff for the purpose of carrying this sentence into effect; by virtue of which your petitioner is now in the said common jail in custody of Samuel W. Bell, sheriff.'" The defect complained of in the present case is not in the order but a clerical error in making out the transcript to the warden of the county jail. Under the facts as presented, it appearing that the order itself was in proper form, and the petition showing on its face there were just grounds for making it, relator is not entitled to a release on such a mere technicality: Commonwealth v. Wright, 126 Pa. 464.

Relator further contends an attachment for contempt should not be sustained for the reason that other remedies are available, and further that the refusal to obey the order of the court is not a criminal contempt, but is in the nature of an execution process for the enforce-

ment of a civil right, and, since the performance of the act was not to be done in the presence of the court, it was one which could be punished by fine only under the Act of June 16, 1836, P. L. 784, Section 24, which provides that "the punishment of imprisonment for contempt as aforesaid shall extend only to such contempts as shall be committed in open court and all other contempts shall be punished by fine only." With regard to the latter contention, Section 13 of the same act, as extended by the Act of February 14, 1857, P. L. 39, gives Courts of Common Pleas the jurisdiction and powers of a court of chancery in so far as relates, inter alia, to "the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interest of the community or the rights of individuals." While the Act of July 12, 1842, P. L. 339, abolishes imprisonment for debt, it expressly excepts from its provisions "proceedings as for contempt, to enforce civil remedies," etc., and provides that in such cases "the remedies shall remain as heretofore." This act did not affect the powers of a court of equity under the Act of 1836 to enforce its decrees by attachment if necessary: Chew's App., 44 Pa. 247. The only question, therefore, is whether the power of a court of equity to enforce its own decrees by attachment and imprisonment for contempt in event of refusal to obey, is restricted by Section 24 of the Act of 1836, limiting the power of imprisonment to contempts committed in open court.

Under the Act of 1836, it was said by this court in Scott v. The Jailor, 1 Grant (Pa.) 237 (page 238) : "The acts of assembly conferring chancery powers, carry with them, as a necessary incident to the jurisdiction, the authority to enforce decrees by the ordinary process of attachment, sequestration, &c., unless that authority be excluded by legislative enactment. The Act of June 16, 1836, regulating the power of the several courts of the Commonwealth to 'issue attachments, and inflict summary punishment for contempts of court,' has no relation

to attachments to enforce decrees in equity, where the object is not to 'inflict punishment,' but to compel performance of such decrees." In Tome's App., 50 Pa. 285, it was held that the Orphans' Court had power to enforce by attachment a decree against an executor to pay and deliver over to his successors property in his hands belonging to the estate. It was there said (page 298); "The last objection is that the imprisonment here is unlimited, and therefore contrary to the provisions of the Act of 16th of June, 1836. But the restriction stated in the 23d Section is upon the power to inflict summary punishment by contempt of court. This is rendered still more clear by the 24th Section, which restricts the punishment of imprisonment for contempts to those committed in open court. Attachments to enforce civil remedies are plainly not within the enactment, for the reason that they are not used as punishment, but as the means of remedy: and for the reason that, if within the law, they are wholly abolished. The contempts which are punished by imprisonment are those only which are committed in open court, and, therefore, all such attachments that operate upon a party for nonperformance of a duty in pais, or which (as in all these cases) must be performed outside of the walls of the courtroom, necessarily cannot be executed by imprisonment. The power to detain the party in jail is gone, and he can be punished only with a fine, which fails of the very object of the writ as a remedy by way of enforcement." The relator, by his counsel, quotes the latter part of the above language as absolute authority to show he "was not guilty of what is known as contempt of court, but is charged with having refused to obey a decree of this court to abate a nuisance." If the language is considered as a whole the distinction made by the court between a proceeding to punish for contempt and one to enforce a civil remedy clearly appears; and relator's very statement of the case is an admission that it is within the latter class. He thus argues himself out of court. Another case in point is Common-

wealth, ex rel., Lowry, v. Reed, 59 Pa. 425.   That was an
order on respondent to surrender a child in his posses-
sion to its guardian.   He refused to obey the order and a
rule for attachment was entered against him, and after
hearing he still persisted in his refusal, and was com-
mitted to jail for contempt until the order should be
complied with.   The same argument made by relator in
the present case was made in that case and it was said,
(page 429) : "The error in the position taken is that
the commitment on attachment was not a sentence for
contempt, but an execution of attachment.   The com-
mitment was necessary where its execution, so far as the
seizure of the defendant was concerned, had resulted
fruitlessly in regard to the mattter for which it had is-
sued......In Tome's App., 50 Pa. 285, my Brother Ag-
new proves it (an attachment) to be, in civil cases, a
civil remedy.   Such manifestly was its nature here and
so intended.   We think the court did not transcend its
power in the least in its proceedings on the attachment.
The only way open for the relator to free himself from his
unhappy predicament is by obeying the order of the
court."

Under the foregoing statutes and authorities, the pro-
vision of the Act of 1836, limiting the power of imprison-
ment to contempts which occurred in the presence of the
court, has no application to cases of attachments to en-
force civil remedies, where the object is to secure compli-
ance with a decree of court.   The power to enforce their
decrees is necessarily incident to the jurisdiction of
courts.   Without such power, a decree would in many
cases be useless.   "All courts have this power, and must
necessarily have it; otherwise they could not protect
themselves from insult, or enforce obedience to their
process.   Without it, they would be utterly powerless":
Williamson's Case, 26 Pa. 9, 18.   In Commonwealth, ex
rel., Tyler v. Small, 26 Pa. 31, it was said (page 42) :
"The imprisonment of the party who is in contempt is
one of the ordinary steps in all proceedings of this kind,

and is usually ordered as a matter of course, until he submits; and as one of the means of enforcing the decree in favor of the plaintiff."

The contention that the power to imprisonment for contempt does not exist because there is another possible remedy, is equally without merit. There can be no doubt of the general power of a court of equity to give a complete remedy when its jurisdiction has once attached to the subject-matter of the suit. In such case the mere existence of a remedy at law is not sufficient to prevent equity from giving complete relief. Thus, in Winton's App., 97 Pa. 385, it was said (page 394) : "The position of the plaintiff is this: Having obtained a decree in his favor by which the deed was declared a mortgage, upon the offer to pay promptly and in cash the amount due thereon, he now declines to pay the money, and denies the power of the court to compel him to do so. He seems to be under the impression that the cause has reached a point where the court has lost its power; that the proceedings are at a deadlock, and that the only remedy left the defendant is to go into a court of law with his scire facias upon the mortgage, a writ of ejectment or action of covenant. In the meantime the land, which is chiefly valuable for its coal, is being constantly depreciated by the working of its mines. The plaintiff has mistaken the powers of a court of equity. It is not so helpless as he imagines. When once it has a case within its grasp it has all the authority necessary to a full disposition of all the questions arising therein. In doing so it has not occasion to call to its aid the assistance of a court of law. Its remedies are plastic, and may be moulded to meet the exigencies of the case. The plaintiff having invoked this jurisdiction and obtained the relief he sought, cannot now turn the defendant over to a court of law to obtain the redress to which he is entitled upon the plaintiff's own showing. The tribunal to which the latter has appealed will hold him and his property within its grasp until he does that equity which he solemnly promised to

perform." The mere existence of a right to a writ of assistance, or any other remedy, does not take away the power of the court to enforce its decrees by attachment and imprisonment until the offender consents to comply with the order. The method of enforcing the decree is largely within the discretion of the court making the order, which may, if it sees fit, adopt such alternative method as may be effective in carrying out its order, in which event the prisoner would be entitled to be released. Thus if the rights of other parties to the proceeding in which the decree was made require immediate execution of the order, compliance with which has been refused, they may apply for such alternative order as may be necessary to carry it out. But in the present proceedings, the relator is the actor. He in effect says: "I refuse to obey the decree of the court, but deny the right of the court to imprison me for such refusal because the court has power to do that which I refuse to do." Why should we come to his rescue to help him escape from a self-imposed punishment? The question is not one of enforcement of a judgment where there are express statutory provisions governing the procedure, or of punishment for the commission of an act, but a question of the power of a court of equity to enforce its own decree. As no adequate reason for interference by this court has been shown, a proper regard for law and order requires us to remand the relator to the county jail until the decree is complied with, or until the court below shall see fit to carry out its order in some other manner.

While, under the view we take of the case, it is unnecessary to discuss the question of alternative remedies which might be adopted by the court below upon application of the parties injured by reason of the continued refusal of relator to obey the decree, yet as this question was extensively argued by counsel, and is liable to arise in the future, we have concluded to refer to it at some length in order to point out to the court below a rule of procedure in carrying out its decree on application by

proper parties in the event of relator's continued refusal to comply therewith. The maintenance of the building in its present location is a nuisance for which an indictment would lie, and, on conviction thereof, defendant, besides being sentenced to a fine or imprisonment, could be ordered to abate the nuisance and, on his failure to do so, the court could command the sheriff to abate it at defendant's cost: Taggart v. Commonwealth, 21 Pa. 527; Barclay v. Commonwealth, 25 Pa. 503; Commonwealth v. Balto. & Ohio R. R. Co., 223 Pa. 23. But why should plaintiffs be put to the additional cost and inconvenience of another action when they have already pursued to final judgment one proceeding in a court of competent jurisdiction? To so hold would be to make the effectiveness of the decrees of our courts of equity depend upon the whims of individuals who choose to defy the order of the court. An appropriate remedy, under such circumstances, would seem to be a writ of assistance. While, under the English chancery practice, this was a writ generally used to put a person in possession of realty to which he was declared to be entitled, the remedy is founded on the general principle that the jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and the court will, therefore, carry its own decrees into full execution without seeking the cooperation of any other tribunal: Beatty v. DeForest, 27 N. J. Eq. 482; Terrell v. Allison, 88 U. S. 289; Harding v. Fuller, 141 Ill. 308; Commonwealth v. Dieffenbach, 3 Grant (Pa.) 368. The reason for the remedy indicates that it should not be confined to cases involving realty, but may be extended, when necessary, to the enforcement of decrees requiring specific performance of particular acts. "The jurisdiction of courts of equity to interfere and effectuate their own decrees by injunctions or writs of assistance in order to avoid the relitigation of questions once settled between the parties, is well settled......
'The power of the court to issue the judicial writ or to

make the order and enforce the same by a writ of assistance rests upon the obvious principle that the power of the court to afford a remedy must be coextensive with its jurisdiction over the subject-matter.   Where the court possesses jurisdiction to make a decree, it possesses the power to enforce its execution' ": Root v. Wollworth, 150 U. S. 401, 411.   "It is a rule of that court (the court of equity) to do complete justice when that is practicable, not merely by declaring the right but by affording a remedy for its enjoyment": Terrell v. Allison, 88 U. S. 289, 291.   "Courts of chancery have authority, both by their common law jurisdiction and under the express provisions of the statute, to issue writs of assistance, or possession, for the purpose of enforcing their decrees and orders, and in the exercise of this power they can compel the delivery of personal property, or the possession of land, by any of the parties to the writ, by persons coming into possession pendente lite, or by mere naked trespassers": Hooper v. Yonge, 69 Ala. 484, 485.   In Commonwealth v. Reed, supra, a writ of assistance was issued to compel a respondent to surrender possession of a ward to his guardian.   Under these authorities, we see no reason why the writ of assistance may not be issued in the present case upon application by parties injured by the continued existence of the obstruction in the right of way.

Under the facts of the present case there will necessarily be considerable expense incident to the carrying out of the decree under a writ of assistance, if it is invoked, and the question of payment of such expense will then arise.   Under the English law, a party who persisted in refusing to obey the decree of court, after imprisonment for contempt, was liable to have his property seized under a writ of sequestration until such time as the contempt should be purged: Black. Com., book III, *444; 2 Daniel's Ch. Pr. (6 Amer. Ed.) *1047; Geery v. Geery, 63 N. Y. 252.   Under this writ the property could be sold, or the income appropriated until it was sufficient

to satisfy the costs and expenses incident to enforcing the decree. "The process of sequestration although it has gone almost out of use, since the statute allowing an ordinary execution against the real as well as the personal estate of a party, to enforce the payment of money decreed by this court, may be properly resorted to as a means of enforcing the performance of other decrees, where an attachment cannot be served, or where the defendant chooses to remain in prison, after his commitment for contempt of the court": Hosack & Blunt, Ex'rs, v. Rogers, 11 Paige (N. Y.) 603, 606. See also Roberts v. Stoner, 18 Mo. 481. While our own statutes, abolishing imprisonment for debt, would prevent the issuing of this writ to enforce a decree for payment of money, except, e. g., when a life estate is taken in execution, the power to use it in other cases to compel obedience to the order of the court to do a specific act still exists. The right is recognized in Equity Rule 7 of the United States Supreme Court, which provides that a writ of attachment, or writ of sequestration, or writ of assistance, may issue for the purpose of compelling obedience to any interlocutory or final decree; and in Rule 8 which provides, inter alia, that if a decree be for the performance of any specific act, and has not been complied with, an attachment may issue against the delinquent party, and he shall not be discharged until full compliance with the decree and payment of costs, and, if he cannot be found, a writ of sequestration may issue against his estate to compel obedience. Substantially the same provisions appear in our own Equity Rules, Nos. 86 and 88. See also Commonwealth v. Dieffenbach, 3 Grant 368. We see no reason why the decree in the present case may not be enforced by writs of assistance and sequestration, upon application to the court below by proper parties. But, as we have before indicated in this opinion, the relator has no standing to complain of the refusal of the court to adopt such remedies in his own relief, so long as parties

injured by nonperformance of the decree do not see ·fit to apply for relief.

The relator is remanded to the county jail until the decree of court is complied with, or until the court below shall see fit to carry out its order in some other manner.