## Knaus *v.* Knaus, Appellant.

372

Argued September 28, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Frank R. Bolte,* for appellant.

*John B. Nicklas, Jr.,* with him *Allen D. McCrady* and *McCrady & Nicklas,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, December 29, 1956:

This is an appeal from an order of the Court of Common Pleas of Allegheny County, No. 803, January Term, 1953, committing appellant until he purged himself of contempt of that court.

In September 1949, William A. Knaus, the appellant, sued in the Court of Common Pleas of Allegheny County for an absolute divorce from his wife, Vida L. Knaus, the appellee. Mrs. Knaus in turn filed a counter-suit for a limited divorce in February of 1950. The two cases were tried together before Judge WEISS, and both were dismissed on July 22, 1952. Mrs. Knaus appealed her case to the Superior Court which, on March 17, 1953, affirmed the dismissal (173 Pa. Superior Ct. 111). On August 25, 1952, at No. 1871, April Term, 1950, Judge WEISS ordered appellant to pay an additional counsel fee of $850 to appellee's attorney and witness fees and expenses in the sum of $125, which payments, it appears, have not been made.

Prior to the dismissal of the divorce actions by Judge WEISS, appellant moved to Little Rock, Arkansas, establishing residence there on June 24, 1952. On August 28, 1952, four days after the necessary two months statutory period of residence he instituted a divorce action in the Pulaski Chancery Court in Arkansas. On September 5, 1952, Mrs. Knaus was notified of the Arkansas proceeding. She filed a special appearance there on September 23, 1952, and contested the jurisdiction of the Arkansas Court on the ground that appellant was still domiciled in Pennsylvania.

After the Arkansas suit was instituted and before a hearing was held, appellee, on October 24, 1952, filed the injunctive proceeding in question on this appeal. This case was docketed by the Allegheny County Court as No. 803, January Term, 1953. Appellant, who was served in Arkansas by registered mail, filed a special appearance and preliminary objections contesting the jurisdiction of the Pennsylvania Court.

A hearing was held on the appellee's bill in equity on November 5, 1952, before Judge WEISS, who, on that date, issued a preliminary injunction restraining appellant from proceeding with the Arkansas divorce, from proceeding with any other divorce, and from doing anything else "jeopardizing" the marital status. Two months later, on January 5, 1953, a hearing was held in the Arkansas divorce case, at which appellee. appeared and testified, and on April 2, 1953, the Arkansas Court granted appellant a final divorce decree. Appellee appealed to the Arkansas Supreme Court on the ground of lack of jurisdiction. The Arkansas Supreme Court affirmed the lower court decree on April 19, 1954. Appellant then married one Georgiana Barbarich in Arkansas on August 7, 1954, and a child was subsequently born of this marriage. While the appeal to

the Arkansas Supreme Court was still pending, Judge Weiss, on September 4, 1953, in response to *a motion made by appellee's counsel,* adjudged appellant in contempt of the November 5, 1952 order (No. 803, January Term, 1953), which had enjoined appellant from proceeding with the Arkansas divorce, and also in contempt of the August 25, 1952, order (No. 1871, April Term, 1950), which had ordered appellant to pay an additional counsel fee and witness fees and expenses in the earlier Pennsylvania divorce action, and directed an attachment to issue.

On September 7, 1954, appellant filed a petition in the Allegheny County Court to dissolve the No. 803, January Term, 1953, injunction, but, though this was heard by the court en banc on December 13, 1954, no decision has been rendered.

In accordance with the attachment order issued on appellee's motion by Judge Weiss on September 5, 1953, about two years later appellant was apprehended in Allegheny County, and, after a hearing before Judge Weiss, appellant on October 17, 1955, was again declared guilty of contempt of the injunctive order of November 5, 1952 (No. 803, January Term, 1953), and as well of the order of August 25, 1952 (No. 1871, April Term, 1950). A single order was then entered committing appellant to the Allegheny County Jail "until he purge himself of the contempt of this court". From this order the defendant appealed to this Court.

The contempts of which appellant was found guilty and for which by said order he was committed were: (1) Proceeding with the Arkansas divorce action in violation of the preliminary injunction entered on November 5, 1952, in No. 803, January Term, 1953; and (2) failing to pay additional counsel fee of $850 and witness fees and expenses in the sum of $125 as ordered

by the court on August 25, 1952, in No. 1871, April Term, 1950.

It is first necessary to determine the type of contempt for which appellant was committed. Contempts broadly fall into two categories, civil and criminal. Criminal contempts are further subdivided into direct and indirect contempts.

A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto to interfere with its immediate business, and punishment for such contempts may be inflicted summarily: Act of June 16, 1836, P. L. 784, §§23, 24, 17 PS §§2041, 2042: *Levine Contempt Case,* 372 Pa. 612, 95 A. 2d 222; *Snyder's Case,* 301 Pa. 276, 152 A. 33. An indirect criminal contempt consists of the violation of an order or decree of a court which occurs outside the presence of the court: *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania et al.,* 318 Pa. 401, 178 A. 291; *Kegg et al. v. Bianco et al.,* 151 Pa. Superior Ct. 234, 30 A. 2d 159. The procedural safeguards applicable to a commitment for an indirect criminal contempt are set forth in the Act of June 23, 1931, P. L. 925, §1, 17 PS §2047, which requires admission to bail, notice, a reasonable time to make a defense and affords trial by jury. Section 2 of that Act (17 PS §2048) limits punishment to a maximum of a fine of $100, or imprisonment for fifteen (15) days, or both.

The Act of July 16, 1836, supra, provides: "§23. The power of the several courts of this commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit: I. To the official misconduct of the officers of such courts respectively; II. To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court; III. To the misbe-

havior of any person in the presence of the court, thereby obstructing the administration of justice. §24. The punishment of imprisonment for contempt as aforesaid shall extend only to such contempts as shall be committed in open court, and all other contempts shall be punished by fine only.".

It has been held by this Court, however, that the Act of 1836 does not apply to an attachment to enforce a decree in equity: *Commonwealth ex rel. Lieberum v. Lewis,* 253 Pa. 175, 98 A. 31. In the *Lieberum* case this Court said (p. 181): "Under the foregoing statutes and authorities, the provision of the Act of 1836, limiting the power of imprisonment to contempts which occurred in the presence of the court, has no application to cases of attachments to enforce civil remedies, where the object is to secure compliance with a decree of court. The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would in many cases be useless. 'All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless': Williamson's Case, 26 Pa. 9, 18. In Commonwealth ex rel. Tyler v. Small, 26 Pa. 31, it was said (page 42): 'The imprisonment of the party who is in contempt is one of the ordinary steps in all proceedings of this kind, and is usually ordered as a matter of course, until he submits; and as one of the means of enforcing the decree in favor of the plaintiff.' ".

The dominant purpose of a contempt proceeding determines whether it is civil or criminal. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But

where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained: *United States v. United Mine Workers of America*, 330 U. S. 258, 303. A judgment in a civil contempt proceeding for the benefit of a private plaintiff will, of course, incidentally vindicate the authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests. But the test is the dominant purpose, not the incidental result: *Gompers v. Bucks Stove & Range Company*, 221 U. S. 418, 441.

The principal case in Pennsylvania distinguishing civil and criminal contempt is *Patterson v. Wyoming Valley District Council*, 31 Pa. Superior Ct. 112. There the court summed up the difference between the two in a quotation from *Thompson v. P. R. R.*, 48 N. J. Eq. 105: "Proceedings in contempt are of two classes namely, first, those instituted solely for the purpose of vindicating the dignity and preserving the power of the court. These are criminal and punitive in their nature and are usually instituted by the court in the interest of the general public and not of any particular individual or suitor. Second, those instituted by private individuals for the purpose mainly, if not wholly, of protecting or enforcing private rights and in which the public have no special interest. These are remedial or civil in their nature rather than criminal or punitive.".

The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion. These are the considerations which play a part, either expressly or impliedly, in the determination of the question by a majority of the courts. Most of these criterions are listed in a well-considered opinion by the court in *Philadelphia & Reading Coal & Iron Co. v. Whary et al.,* 52 D. & C. 83, and are discussed in Beale, Contempt of Court, Criminal and Civil, 21 Harvard Law Review 161. See also to the same effect *Gompers v. Bucks Stove & Range Company,* supra.

Under the applicable principles and the procedure used in this case, it is clear that the contempt for which appellant was committed was civil rather than criminal. The action here was brought, and the motion to attach for contempt was made, by a private individual, Vida L. Knaus; its intention was to coerce appellant into obeying the earlier decrees of the court in appellee's favor; there was no separate action, but merely a continuation of the original civil actions between husband and wife; the acts complained of were not offenses against organized society; and the imprisonment inflicted was not limited to the statutory

fifteen (15) days as in the case of indirect criminal contempts, but was ordered until appellant purge himself of the contempt.

Where a defendant is guilty of a civil contempt of court, he may be committed or conditionally fined for the purpose of coercing him into compliance with the order of the court, and upon compliance the defendant is entitled to immediate release. In *Gompers v. Bucks Stove & Range Company,* supra, the Court said (p. 442) : ". . . The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in In re Nevitt, 117 Fed. Rep. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.".

In *United States v. United Mine Workers of America,* supra, the United States Supreme Court approved the imposition of a substantial fine upon John L. Lewis for civil contempt, but provided that the fine be conditioned upon his failure to purge himself of the civil contempt within five days.

The primary objective or purpose of punishment for civil contempt is to coerce the defendant into compliance with the decree of the court and thereby provide the remedy ordered for the benefit of the plaintiff. Every order which imposes punishment for civil contempt should state the condition which upon fulfilment will result in the release of the defendant or the remission of the fine.

The order for attachment of the defendant states that "William A. Knaus has ignored and violated said Injunctive Order [i.e., No. 803, January Term, 1953]

by proceeding with the aforesaid Divorce proceedings at No. 95570 in the Chancery Court of Pulaski County, State of Arkansas, which Court has entered a Decree allegedly divorcing the said William A. Knaus from the said Vida L. Knaus, as of April 2, 1953.''. This is the violation of the order at No. 803, January Term, 1953, upon which appellant's commitment was based. But what could the appellant do to purge himself of this contempt? The Arkansas divorce decree is a matter of record in that State. Appellant had ceased "prosecuting and proceeding with" the divorce at the time the attachment in contempt issued.

There is in this record no evidence which discloses what appellant could do to remedy this matter at the time the attachment issued, or when his commitment was ordered. Before a defendant may be committed for civil contempt, it is essential that it be clear what is required of him in order to purge himself of the contempt, and the commitment order should state the condition which when complied with will release him. In the absence thereof, a commitment for civil contempt is improper. An order committing a defendant to prison for a civil contempt until he does something which is apparently beyond his power to do is clearly an order which this Court cannot approve.

Although the procedural indicia of civil contempt are unquestionably present in this case, even if it be assumed arguendo that appellant was committed for an indirect criminal contempt, his sentence would have to be reversed because the record before us fails to show that the procedural protection given by the Act of 1931, supra, was afforded to appellant, and the commitment order exceeded the limitations established by that Act.

The order of commitment for contempt also recites the order entered by the Allegheny County Court on August 25, 1952, at No. 1871, April Term, 1950, which order relates to the payment of attorney's fees and witness fees and expenses.

The record being reviewed on this appeal is No. 803, January Term, 1953, since that was the only appeal taken and the only record included in the certiorari issued by this Court upon the filing of the appeal. Without the record in No. 1871, April Term, 1950, it is impossible to review the order of the court below as it applies to that case. Aside from the dubious propriety of merging in a single commitment order separate contempts arising out of different cases, before an order may issue for payment of a wife's counsel fees, witness fees and expenses in a divorce case, there must be proof of the need of the wife and the husband's financial ability: *Rothman v. Rothman*, 180 Pa. Superior Ct. 421, 119 A. 2d 584. In the absence of the record in No. 1871, April Term, 1950, there is no evidence whether there was a hearing in the court below on these issues and, if so, whether the necessary proofs were established. The question whether a defendant may be committed for contempt for failure to comply with an order to pay counsel fees in a divorce case was not argued before this Court, nor specifically considered by the court below. For the foregoing reasons, we do not decide in this appeal whether defendant could be committed for contempt because he failed to comply with an order to pay counsel fees and witness fees and expenses in the divorce action.

In view of the disposition of the appeal in this opinion, it is unnecessary to consider the other contentions made by the parties.

The order of the Common Pleas Court of Allegheny County entered at No. 803, January Term, 1953, com-

mitting appellant to the Allegheny County Jail for contempt is reversed, each party to bear his or her own costs.

Mr. Justice MUSMANNO dissents.