## Cox, Appellant, *v* Cox.

Argued November 19, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

574

*James Lenahan Brown,* with him *Lee Paul Heid,* for appellant.

*James P. McArdle, James E. McLaughlin,* and *Ralph S. Sapp,* for appellee.

OPINION BY MR. JUSTICE BELL, January 16, 1958:

This is an appeal from the Order of the Court of Common Pleas of Allegheny County, imposing upon the appellant, Dr. Ralph W. E. Cox, Jr. a fine of $1,-000 and a sentence of imprisonment for a period of 90 days for contempt of Court.*

Dr. Cox and his wife, M. Lorraine, were married. May 16, 1951; the first marriage for Dr. Cox and the second marriage for Mrs. Cox. Unfortunately, their marriage was a failure and the marital domicile was maintained for approximately 15 months. However, during that time they had a child, Maureen Cox. Maureen is the basic cause of the proceedings which are now before us on appeal.

---

* An additional appeal from an Order of the Court of Common Pleas awarding appellant's wife additional counsel fees, inter alia, for the defense of a divorce action brought by the appellant, of $110,600, and awarding Master's fees of $3,500, is now pending before the Superior Court.

Mrs. Cox, on August 8, 1952, immediately after the parties separated, commenced separation proceedings against her husband, the appellant, in New York, alleging abandonment and non-support. On August 27, 1952, appellant took Maureen from New York to the home of his parents, Ralph W. E. Cox, Sr. and Letitia Cox, in Pittsburgh. Mrs. Cox then was awarded a Judgment of Separation by the Supreme Court of New York, and in that proceeding was awarded the custody of Maureen.

On the basis of this custody award, Mrs. Cox instituted habeas corpus proceedings in Allegheny County. The petition averred, inter alia, that Maureen was being illegally detained by the paternal grandparents of the child, and that the paternal grandparents had refused to give up the child to Mrs. Cox. On June 4, 1953, the trial Judge, without taking any testimony, awarded the custody of Maureen to Mrs. Cox on the basis of the New York custody order.

The grandparents then filed a petition to vacate the above order. A hearing was held sur this petition at which testimony was received from Harold Lovell, M.D. and Dr. Cox, the appellant. This testimony related to the fitness of the parents, with particular reference to the welfare of the child. Dr. Lovell, a psychiatrist, testified in substance that Mrs. Cox, who had been his patient for some time prior to the hearing, was a psychopathic personality and an alcoholic, and that in his opinion it was dangerous to permit Mrs. Cox to have custody of Maureen since she might harm or injure the child to spite Dr. Cox. Appellant also testified that Mrs. Cox was a chronic alcoholic, that she failed to properly take care of the child, and that it had always been necessary for him to employ nurses for the child while the child was with Mrs. Cox. The lower Court concluded that it had jurisdiction of

the matter since (1) the appellant had been a resident of Allegheny County during his lifetime, (2) the child had been a resident since August 28, 1952, (3) Mrs. Cox had submitted herself to the jurisdiction of the Allegheny County Court by virtue of the petition for habeas corpus wherein she appeared through counsel, and by reason of requesting a continuance for the present hearing, and (4) the Court had jurisdiction in all matters affecting the welfare of the child, Maureen. The trial Judge then vacated the Order of June 4, 1953, and awarded permanent custody of the child to her father, the appellant. Mrs. Cox ignored this Order of Judge WEISS and failed to deliver custody of Maureen to the appellant.

Finally, on *October 29, 1954,* all interested parties and their respective counsel entered into a stipulation covering various phases of the divorce litigation and the habeas corpus and custody proceedings. This stipulation was approved as a Consent Order by Judge WEISS. The stipulation and Order of the Court provided in pertinent part as follows:

"10. It is further agreed with the approval of this Court that, in consideration of this stipulation and order, *the said Lorraine Cox shall have the temporary custody** of the said child during the pendency of these proceedings. [The custody rights of the appellant and reciprocal rights of visitation then followed.]

"14. At a time in the future *when the court,* who has heard these proceedings since its inception, *has a free week of consultation* in the Criminal Court, *a hearing date will be set* when counsel and the parties are present and counsel for the defendant shall have the right to produce any medical testimony of any character in behalf of the defendant at the expense of

---

* Italics throughout, ours.

the said plaintiff in this proceeding to disprove medical testimony heard ex parte by the court in behalf of the plaintiff as to defendant's fitness to retain custody of said minor child. If the said court, after hearing said additional medical testimony, finds that there is a serious dispute involved as to the defendant's ability to care for her child, an impartial psychiatrist will be appointed at the expense of the plaintiff, whose testimony shall be presented to this court as to the fitness of the defendant to have the permanent custody of said minor child. This will only be heard with all counsel and the parties present."

Appellant, *on July 22, 1955,* petitioned the Court to set a hearing date as prescribed in Paragraph 14 of the stipulation. In this petition the appellant averred, inter alia, "that he was assured that the proposed hearing, referred to in Paragraph 14 of the Stipulation, would be held the end of December, 1954, or the beginning of January, 1955, and further avers that it was in consideration of said assurance that your petitioner agreed to the *temporary* Custody Stipulation set forth in Paragraph 10 of the same.

"SEVENTH

"That your petitioner has, on numerous occasions, applied to your Honorable Court to schedule a time for the continuance of the hearings in this matter, pursuant to Paragraph 14 of the Stipulation and Order of Court; that on several occasions, your Honorable Court scheduled a date for such hearings but the same were adjourned at the request of counsel for the relatrix and over the opposition and objection of your petitioner and his counsel; that, to date, nine (9) months later, no hearing has been held with the result that the *temporary* custody of the minor child, Maureen Cox, in the mother, M. Lorraine Cox, provided for in Paragraph 10 of the aforementioned Stipulation and Order.

of Court, *has taken on the meaning of permanent* custody in contravention of the provisions of said Stipulation and Order of Court.

"EIGHTH

"That your petitioner avers and reaffirms that the relatrix, M. Lorraine Cox, is not a fit person and is a dangerous person to care for the minor daughter of your petitioner, Maureen Cox, and further avers he is being deprived of his rights as the father of the said minor child for the reason that the above captioned case has not been disposed of nor has a hearing been held pursuant to the express intention of this Court as set forth in the above referred to Stipulation and Order of Court."

On *October 26, 1955,* appellant obtained custody of Maureen pursuant to the provisions of the Court approved stipulation of *October 29, 1954.* Prior to the date upon which he was to return the child under the provisions of the Order of October 29, 1954, appellant, accompanied by Maureen, moved to Clarksdale, Mississippi. Appellant instituted proceedings in the Mississippi Court for a divorce and for permanent custody of Maureen. That Court made Maureen a ward of the Court and awarded temporary care, custody and control of Maureen to the appellant pending a final hearing on his complaint. That Court also issued an injunction prohibiting the removal of Maureen from Mississippi.*

As a consequence of these actions by appellant, Mrs. Cox filed in the Court of Common Pleas of Allegheny County a Motion for Attachment in Contempt against

---

* On May 29, 1957 the appellant was granted by the Chancery Court of Bolivar County, Miss. an absolute divorce from Mrs. Cox, and was granted complete, permanent and continuous custody of Maureen. Mrs. Cox has taken appeals from this order to the Supreme Court of Mississippi.

the appellant, the paternal grandparents and appellant's attorneys. The trial Judge thereupon issued an arrest attachment against the appellant and his parents and then after an ex parte hearing, imposed a fine of $1,000 on each of these individuals, and in addition sentenced the appellant to imprisonment for a period of 90 days. The order provided as follows:

"And now, to-wit, this 1st day of Dec., 1955, after a hearing held before this Court on Monday, November 21, 1955, and after the plaintiff, Ralph Cox, Jr., Ralph Cox, Sr., and Letitia Cox having failed to appear personally to purge themselves of contempt of the Order of this Court of October 29, 1954, IT IS HEREBY ORDERED AND DECREED that a fine of $1,000.00 each be and is hereby imposed upon Ralph Cox, Jr., Ralph Cox, Sr., and Letitia Cox; AND IT IS FURTHER ORDERED AND DECREED that the said Ralph Cox, Jr., be and is hereby sentenced to imprisonment in the Allegheny County Jail for a period of ninety (90) days.

By the Court:

Samuel A. Weiss"*

Appellant appeals from the summary and ex parte finding of contempt and the fine and sentence thus imposed. The legal issues raised by this appeal were considered at length by this Court in the recent case of *Knaus v. Knaus,* 387 Pa. 370, 127 A. 2d 669. In that case, William Knaus, the appellant, commenced divorce proceedings against his wife in Allegheny County. The latter in turn filed a counter suit for limited divorce; both suits were dismissed by Judge WEISS. Prior to the dismissal, however, the appellant, Mr. Knaus, moved to Arkansas and there instituted a divorce proceeding. Mrs. Knaus then filed a bill in

---

* The fine imposed upon the paternal grandparents was subsequently vacated.

equity before Judge WEISS, who in response thereto issued a preliminary injunction restraining the appellant from proceeding with the Arkansas divorce, and from doing anything to "jeopardize" the marital status. Subsequently, a hearing was held in the Arkansas divorce case at which the appellant appeared, and thereafter obtained a final decree of divorce.

*While the Arkansas action was still pending,* the trial Judge pursuant to a motion made by Mrs. Knaus' counsel, adjudged Mr. Knaus in contempt, and enjoined him from further proceedings in the Arkansas divorce action. Two years later the appellant was apprehended in Allegheny County and was declared guilty of contempt of the two injunctive orders. An Order was entered by the Court of Common Pleas of Allegheny County committing the appellant to jail "until he purge himself of the contempt of this court". In reversing the lower Court, this Court said (pages 375-379) :

"A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto to interfere with its immediate business, and punishment for such contempts may be inflicted summarily: Act of June 16, 1836, P. L. 784, §§23, 24, 17 PS §§2041, 2042: Levine Contempt Case, 372 Pa. 612, 95 A. 2d 222; Snyder's Case, 301 Pa. 276, 152 A. 33. An indirect criminal contempt consists of the violation of an order or decree of a court which occurs outside the presence of the court: Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania et al., 318 Pa. 401, 178 A. 291; Kegg et al. v. Bianco et al., 151 Pa. Superior Ct. 234, 30 A. 2d 159. The procedural safeguards applicable to a commitment for an indirect criminal contempt are set forth in the Act of June 23, 1931, P. L. 925, §1, 17 PS §2047, which requires admission to bail, notice, a reasonable time to make a defense and affords trial by jury. Section

2 of that Act (17 PS §2048) limits punishment to a maximum of a fine of $100, or imprisonment for fifteen (15) days, or both.

"The Act of July 16, 1836, supra, provides: '§23. The power of the several courts of this commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit: I. To the official misconduct of the officers of such courts respectively; II. To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court; III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice. §24. The punishment of imprisonment for contempt as aforesaid shall extend only to such contempts as shall be committed in open court, and all other contempts shall be punished by fine only.'.

"It has been held by this Court, however, that the Act of 1836 does not apply to an attachment to enforce a decree in equity: Commonwealth ex rel. Lieberum v. Lewis, 253 Pa. 175, 98 A. 31. In the Lieberum case this Court said (p. 181): 'Under the foregoing statutes and authorities, the provision of the Act of 1836, limiting the power of imprisonment to contempts which occurred in the presence of the court, has no application to cases of attachments to enforce civil remedies, where the object is to secure compliance with a decree of court. The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would in many cases be useless. "All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult or enforce obedience to their process. Without it, they would be utterly powerless": Williamson's Case, 26 Pa. 9, 18. In Commonwealth ex rel. Tyler v. Small, 26 Pa. 31, it was said (page 42): "The imprisonment of the party who is in contempt is one of

the ordinary steps in all proceedings of this kind, and is usually ordered as a matter of course, until he submits; and as one of the means of enforcing the decree in favor of the plaintiff." '

"*The dominant purpose* of a contempt proceeding determines whether it is civil or criminal. *If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public*, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited *primarily* for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained: United States v. United Mine Workers of America, 330 U. S. 258, 303. . . .

"Under the applicable principles and the procedure used in this case, it is clear that the contempt for which appellant was committed was civil rather than criminal. . . .

"Where a defendant is guilty of a civil contempt of court, he may be committed or conditionally fined for the purpose of coercing him into compliance with the order of the court, and upon compliance the defendant is entitled to immediate release. In Gompers v. Bucks Stove & Range Company, supra, the Court said (p. 442) : '. . . The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. . . .

"The primary objective or purpose of punishment for civil contempt is to coerce the defendant into com-

pliance with the decree of the court and thereby provide the remedy ordered for the benefit of the plaintiff. Every order which imposes punishment for civil contempt should state the condition which upon fulfilment will result in the release of the defendant or the remission of the fine."

In *Commonwealth ex rel. Lowry v. Reed,* 59 Pa. 425, 429, the defendant in a habeas corpus proceeding was ordered to surrender his grandchild (who was then in his custody) to the legal guardian. The defendant refused to produce the child and was then committed under an attachment issued by the trial Court as for a contempt. In affirming the commitment, the Court held the commitment to be in the nature of a civil remedy.

If appellant were guilty of any contempt, it is clear under *Knaus v. Knaus,* 387 Pa., supra, and *Commonwealth ex rel. Lowry v. Reed,* 59 Pa., supra, that his conduct would have amounted to civil contempt and that the Court's contempt Order could not be sustained. But the contempt Order must be vacated for a more important and basic reason. The Court approved Stipulation or Order of October 29, 1954 was not sufficiently definite, certain and unequivocal as to justify an Order of contempt for violation thereof after nine months' inordinate delay.

Order reversed.*   Costs shall be paid by appellee.

---

\* We note that the lower Court attempted to rectify its mistake by entering an order and decree dated November 18, 1957, providing that its orders of November 9, 1955, and of December 1, 1955, "are hereby vacated, set aside and declared null and void". The appeal in this case was taken on May 16, 1957. The effect of this appeal was to remove the entire record from the lower Court, and nothing could thereafter be done by the lower Court in this case except in compliance with the orders or rules or decision of the Supreme Court.