## Grand Lodge of the Brotherhood of Railway and Steamship Clerks *v.* Girard Lodge No. 100 (et al., Appellants).

524

Argued November 17, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused February 20, 1961.*

*Lawrence J. Richette,* with him *Meehan, Neil & Richette,* for appellants.

*Allen S. Olmsted, 2nd,* with him *Walter Biddle Saul,* and *Saul, Ewing, Remick & Saul,* and *Leonard D. Slutz* and *Ivar H. Peterson,* of the Ohio Bar, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 30, 1961:

This suit in equity was instituted in the court below on February 5, 1954, and, in due course, eventuated in an order by this court on February 6, 1956. Our order directed the defendant Lodges to turn over to the plaintiff Grand Lodge the charters, supplies, books, records, funds and other property belonging to the Grand Lodge under the forfeitures and further ordered the defendant officers to account for all monies re-

---

* Reporter's Note: On May 29, 1961 the Supreme Court of the United States denied certiorari.

ceived and spent by them after February 5, 1954. The record was returned to the court below for such action as justice and equity might require in effectuation of our decision, including the dismissal of the defendants' counterclaim. See 384 Pa. 248, 268, 120 A. 2d 523, 532. Ever since then there has been a persistent effort on the part of the defendant officers to resist or impede a full faith compliance below with the directions of our order. The culmination of the defendant officers' obstructive tactics is embodied in their present appeals from the decree of the court below of March 17, 1960, which directed the entry of the several judgments against them, respectively, in differing sums. We would affirm forthwith were it not for the fact that counsel for the plaintiff-appellee stated, at bar, that the defendants are entitled to a further credit.

The contention that the orders of the court below of December 23, 1958, adjudging the respondents in contempt whereof they could purge themselves by the payment of specified sums within thirty days, were punishment for conduct "in the nature of an indirect criminal contempt" is without any basis whatsoever to support it. The proceeding was not for an indirect criminal contempt but for a civil contempt, viz., the respondents' disobedience of the decree in equity entered by the court below pursuant to the mandate of this court sur our final order entered at 384 Pa. 248, 268, 120 A. 2d 523, 532, on the respondents' appeals. It was a use of civil process to compel obedience to a decree in equity. The relief granted was primarily for the benefit of the complainant and not to vindicate the dignity or authority of the court or to protect the interests of the general public. See *Knaus v. Knaus,* 387 Pa. 370, 376-377, 127 A. 2d 669, where Mr. Justice CHIDSEY, speaking for the court, pertinently observed: "The dominant purpose of a contempt proceeding determines whether it is civil or criminal. If

the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained: United States v. United Mine Workers of America, 330 U.S. 258, 303. A judgment in a civil contempt proceeding for the benefit of a private plaintiff will, of course, incidentally vindicate the authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests. But the test is the dominant purpose, not the incidental result: Gompers v. Bucks Stove & Range Company, 221 U.S. 418, 441."

In any event, the orders of December 23, 1958, were never enforced against the respondents; nor were they ever appealed, and the time for appealing them has long since passed. The only appeals actually now before us are from the decree in equity entered by the court below on March 17, 1960, directing the entry of money judgments against the several defendants in the respectively varying sums for which they were found to be accountable.

As determination of the further credit, to which reference has hereinabove been made, will necessitate a pro tanto modification of the decree, to the extent of such credit if and when established, the record will be returned to the court below for modification of the decree accordingly.

Appeals dismissed at appellants' costs and record remanded for further proceedings not inconsistent with this opinion.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I depart from the majority because the lower court adjudicated the defendants in contempt by this order, ". . . after petition, answer and argument it is ordered and decreed that Joseph F. McGovern is adjudged and declared in contempt of this court and subject to attachment of his person. . . ." which discloses that the contempt adjudication was made without hearing.

It matters not whether this is an indirect criminal contempt or an indirect civil contempt. If this were an indirect criminal contempt under the Act of June 23, 1931, P.L. 925, 17 PS §2047, defendants would be entitled to a trial by jury, since that Act discontinued the former practice of having the judge alone make the factual determination whether an indirect criminal contempt had been committed. If this were an indirect civil contempt, the determination would be made by the judge alone, but due process would require that defendants have a hearing wherein the court would adjudge that a contempt had or had not been committed. This safeguard was denied defendants and, even though not appealed from, is error of such magnitude that I would reverse.

Mr. Justice MUSMANNO joins in this dissenting opinion.