Commonwealth ex rel. Beghian, Appellant, *v.*
Beghian.

Argued March 16, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Sylvan Libson,* for appellant.

*Max U. Applebaum,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, September 25, 1962:

Mario A. Beghian, appellant and Betty Ann Beghian, his wife, were living together in Milan, Italy. In the summer of 1960 they came to Allegheny County for a visit accompanied by their children Mark Alistair, 6 years old and Claudia Michele, aged 4½ years. The children were born in Milan and their father is a naturalized citizen of the United States of America while their mother is a native born citizen of the United States.

When the time came to return to Milan, Italy where appellant is employed as general manager of the Italian division of a United States corporation, his wife refused to return with him and retained the children with her. Appellant returned to Allegheny County and instituted habeas corpus proceedings in which a consent order of court was filed on January 10, 1961, the ma-

terial portions being as follows: "[children] are to remain in the custody [of mother] and reside with her in Allegheny County, subject to visitation rights and custody rights in the [father] as follows: 1. During the summer vacation period from July 1 to September 1, the Petitioner-Relator shall have the right of custody at his expense to pick up the children in Allegheny County, by himself or by some proper person of his choice, and to bring them to his residence in Milan, Italy, and have sole custody of the children for such period annually, and to return the children safely to their mother's residence on or before September 1. . . . 4. The Petitioner-Relator shall furnish reasonable bond with corporate surety or cash conditioned for compliance with his obligations under the custody provisions of this Order of Court in the sum of $2,500.00."

Appellant did not return the children to their mother in Allegheny County on September 1, 1961 and refused to return them. He has instituted proceedings in the Italian courts for custody of the children.

The court below in an order of October 18, 1961, ordered that "Mario A. Beghian is declared to be in criminal and civil contempt of this court; and, by way of repetition of the Order of this Court of January 10, 1961, Mario A. Beghian is herewith and hereby ordered and required immediately and forthwith to return the two children, Mark Alistair Beghian and Claudia Michele Beghian, to Betty Ann Beghian in Allegheny County. . . . (e) A fine, in the form of a judgment, is hereby entered in the sum of $25,000.00, payable to Commonwealth of Pennsylvania ex rel. Mark Alistair Beghian and Claudia Michele Beghian. This judgment shall be enforced by executions and attachments of profits, salaries and wages of Mario A. Beghian by any execution or process, including, but not limited to, the Rules of Civil Procedure for the payment of money."

The court below further ordered the $2,500 deposited by the appellant paid to Betty Ann Beghian to be used by her or her representative for transportation and expenses in going to Milan, Italy to regain custody of her children.

This appeal by Mario A. Beghian assails the orders of the court below on several grounds; (1) the acts for which the fine was imposed do not constitute criminal contempt of court, (2) if appellant's acts were indirect criminal contempt, the proceedings and fine, in disregard of the Act of 1931, were invalid, (3) the order to return the children forthwith and imposing an unconditional fine of $25,000 constitutes inappropriate punishment for civil contempt, (4) the $25,000 fine cannot stand as an unconditional compensatory fine for civil contempt, and, (5) the contempt order commingles procedures, purposes, remedies and punishments of criminal and civil contempt and is invalid.

Appellant willfully violated his agreement and the order of court and his contumacious conduct dispels all doubt of the question of his contempt. The recitation of the indisputable facts demonstrates this.

There is usually no considerable difficulty in determining contempt. The problem most often presented in contempt cases is whether it is criminal or civil, and perhaps it is more difficult to distinguish between civil and indirect criminal contempt. It is therefore necessary to refer to the essential purpose of the proceeding. In *Knaus v. Knaus,* 387 Pa. 370, 376, 127 A. 2d 669, 672 (1956), it was said: "The dominant purpose of a contempt proceeding determines whether it is civil or criminal. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the bene-

fit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained: United States v. United Mine Workers of America, 330 U. S. 258, 303. A judgment in a civil contempt proceeding for the benefit of a private plaintiff will, of course, incidentally vindicate the authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests. But the test is the dominant purpose, not the incidental result: Gompers v. Bucks Stove & Range Company, 221 U. S. 418, 441."

Further in *Knaus,* supra, at page 377, the following appears: "The principal case in Pennsylvania distinguishing civil and criminal contempt is Patterson v. Wyoming Valley District Council, 31 Pa. Superior Ct. 112. There the court summed up the difference between the two in a quotation from Thompson v. P. R. R., 48 N. J. Eq. 105: 'Proceedings in contempt are of two classes namely, first, those instituted solely for the purpose of vindicating the dignity and preserving the power of the court. These are criminal and punitive in their nature and are usually instituted by the court in the interest of the general public and not of any particular individual or suitor. Second, those instituted by private individuals for the purpose mainly, if not wholly, of protecting or enforcing private rights and in which the public have no special interest. These are remedial or civil in their nature rather than criminal or punitive'.

"The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled

in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion. These are the considerations which play a part, either expressly or impliedly, in the determination of the question by a majority of the courts. Most of these criterions are listed in a well-considered opinion by the court in Philadelphia & Reading Coal & Iron Co. v. Whary et al., 52 D. & C. 83, and are discussed in Beale, Contempt of Court, Criminal and Civil, 21 Harvard Law Review 161. See also to the same effect Gompers v. Bucks Stove & Range Company, supra." *Cox v. Cox*, 391 Pa. 572, 137 A. 2d 779 (1958), *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 392 Pa. 500, 140 A. 2d 814 (1958). For an example of indirect criminal contempt and types of contempt see *Casco Products Corporation v. Hess Brothers, Inc.*, 184 Pa. Superior Ct. 47, 132 A. 2d 922 (1957).

In applying the applicable principles to the instant appeal it is readily apparent that the type of contempt is civil. If appellant were in the jurisdiction he could be coerced into compliance with the court order by committing him or conditionally fining him and upon his compliance he would be entitled to be released. The primary purpose and objective of punishment for civil contempt is to secure compliance with the order of court by which the appellee will benefit primarily and incidentally the dignity and authority of the court will be vindicated.

It has always been within the power of the court, as an inherently preserved right, to enforce its orders

and decrees and this should be kept in mind when con-
sidering contempt, both civil and criminal. The use of
the power to enforce compliance is exercised with the
objective of compelling performance and not inflicting
punishment: *Commonwealth ex rel. Lieberum v. Lewis,*
253 Pa. 175, 98 A. 31 (1916); *Commonwealth ex rel.
Lowry v. Reed,* 59 Pa. 425 (1868).

The dominant purpose of criminal contempt is to
vindicate the dignity and authority of the court and to
protect the interest of the general public. The instant
case does not meet the requirement of "protecting the
interest of the general public" as the term is used by
the weight of authorities in defining criminal con-
tempt. *Knaus v. Knaus,* supra.

The absence of appellant, in a foreign jurisdiction
(Italy), does not change his contempt status from civil
to criminal nor vary the manner and procedure of
punishment. A direct act of criminal contempt—that
done in the presence of the court or in such proximity
as to interfere with judicial function—may be immedi-
ately and summarily dealt with, while indirect crimi-
nal contempt must be dealt with in accordance with
the provision of the Act of 1931, P. L. 925, §§1, 2, 17
PS §§2047, 2048.

The court forfeited the $2,500 fund deposited by ap-
pellant under terms of the custody agreement for the
benefit of appellee in defraying expenses incurred by
her as a result of appellant's conduct. This was en-
tirely proper as was that portion of the order adjudg-
ing appellant in contempt for his failure to return the
children to the jurisdiction.

The order of the court below imposing uncondition-
ally the fine of $25,000 cannot be lawfully sustained
either as punishment for civil contempt or as compen-
sation.

The orders of the court below are affirmed as modi-
fied by striking the fine of $25,000. Costs on appellant.