J-S73009-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

BETTY LOU COYLE : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
REED B. COYLE, III :
:
Appellant : No. 267 WDA 2018

Appeal from the Order Entered January 18, 2018
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2009-5253

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.: FILED FEBRUARY 27, 2019

Appellant, Reed B. Coyle, III ("Husband"), appeals from the order entered in the Washington County Court of Common Pleas, which denied his exceptions to the Master's report and recommendation resolving Husband's petition for contempt/sanctions, filed against Appellee, Betty Lou Coyle ("Wife"). We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Husband raises the following issues for our review:

(1) WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND [WIFE] IN CONTEMPT OF JUDGE DISALLE'S ORDER OF COURT DATED APRIL 13, 2011.

(2) WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO IMPOSE A GREATER SANCTION AGAINST

[WIFE] FOR HER CONTEMPT OF JUDGE DISALLE'S ORDER OF COURT DATED APRIL 13, 2011, JUDGE GILMAN'S ORDER OF COURT DATED NOVEMBER 19, 2013 AND THE AMENDED ORDER OF COURT DATED DECEMBER 5, 2013? [WIFE] HAS CONTINUALLY DEFIED THE ORDERS OF THIS COURT IN THIS CASE SINCE 2009. THE COURT ABUSED ITS DISCRETION BY FAILING TO ADEQUATELY APPLY CASE LAW TO THIS ISSUE WHEN FAILING TO ASSESS MORE THAN $5,000.00 FOR [WIFE'S] OBDURATE, DILATORY AND VEXATIOUS CONDUCT DURING THIS LITIGATION.

(3) WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO ADDRESS THE INACCURATE CALCULATION OF ATTORNEY'S FEES EXPENDED BY [HUSBAND] DUE TO [WIFE'S] CONTEMPT OF THE ORDERS OF COURT UNDER 42 PA.C.S.A. § 2503(6)?

(4) WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING [HUSBAND'S] CLAIM FOR EXCESSIVE MOVING FEES AGAINST [WIFE], DUE TO [WIFE'S] FAILURE TO ABIDE BY THE ORDERS OF COURT GRANTING [HUSBAND] THE ABILITY TO RETRIEVE HIS MARITAL AND PRE–MARITAL PROPERTY, WHICH CAUSED [HUSBAND] TO INCUR ADDITIONAL MOVING FEES?

(5) WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO AWARD THE ENTIRE AMOUNT OF THE COST OF THE REPLACEMENT KEY TO THE AUDI DUE TO [WIFE'S] DELIBERATE AND UNAUTHORIZED RETENTION OF [HUSBAND'S] PROPERTY?

(6) WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO REQUIRE [WIFE] TO GIVE [HUSBAND] HIS GOLD CHAINS AND MEDALLIONS WITHOUT A CREDIT TO [WIFE], DESPITE EVIDENCE PRESENTED BY [HUSBAND] AS TO [WIFE'S] DELIBERATE CONDUCT IN WITHHOLDING [HUSBAND'S] RIGHTFUL PROPERTY?

(7) WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY FAILING TO GRANT [HUSBAND'S] REQUEST FOR MONETARY REIMBURSEMENT OF THE VALUE OF ANY AND ALL OF [HUSBAND'S] MARITAL

AND PRE-MARITAL PROPERTY AS ILLUSTRATED DURING TRIAL UNDER 23 PA.C.S. § 3502(A)(7) THAT WAS DESTROYED AND/OR DAMAGED BY [WIFE] DUE TO HER COMPLETE DISREGARD OF THE ORDERS OF COURT IN THIS MATTER?

(Husband's Brief at 5-7).

This Court reviews contempt orders subject to the following principles:

[A]n appellate court has the authority to determine whether the findings of the trial court support its legal conclusions, but may only interfere with those conclusions if they are unreasonable in light of the trial court's factual findings. This Court will not reverse or modify a final decree unless there has been an error of law or an abuse of discretion, or if the findings are not supported by the record, or there has been a capricious disbelief of the credible evidence. Furthermore [e]ach court is the exclusive judge of contempt against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs.

Mrozek v. James, 780 A.2d 670, 673 (Pa.Super. 2001) (internal citations and quotation marks omitted). As well, the amount of monetary sanctions imposed is subject to an abuse of discretion standard; however, sanctions deemed excessive under the circumstances might compel reversal or remand for modification. Commonwealth v. Bowden, 576 Pa. 151, 186, 838 A.2d 740, 761 (2003).

As this Court has explained:

The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for the losses sustained.

Commonwealth v. Ashton, 824 A.2d 1198, 1202 (Pa.Super. 2003) (quoting Knaus v. Knaus, 387 Pa. 370, 378, 127 A.2d 669, 673 (1956)).

- 3 -

[T]he court may, in a proceeding for civil contempt, impose the remedial punishment of a fine payable to an aggrieved [complainant] as compensation for the special damages he may have sustained by reason of the contumacious behavior of the offender.

\*     \*     \*

Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.

A judgment in a civil contempt proceeding for the benefit of a private [complainant] will, of course, incidentally vindicate the authority of the court....

Stahl v. Redcay, 897 A.2d 478, 487 (Pa.Super. 2006), appeal denied, 591 Pa. 704, 918 A.2d 747 (2007) (internal citation omitted).

Further, "The imposition of counsel fees can serve as a sanction upon a finding of civil contempt." Sutch v. Roxborough Memorial Hospital, 142 A.3d 38, 68 (Pa.Super. 2016), appeal denied, 640 Pa. 378, 163 A.3d 399 (2016). The purpose of awarding counsel fees in this context is "to reimburse an innocent litigant for the expenses the conduct of an opponent makes necessary, such as the cost of the contempt hearing, so it can be coercive and compensatory but it cannot be punitive." Id. at 69. We review an award of contempt sanctions in the form of counsel fees for an abuse of discretion. Mrozek, supra at 674.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Brandon P.

Neuman, we conclude Husband's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (See Trial Court Opinion, dated April 10, 2018, at 4-16) (finding: (1) Husband's petition for contempt that prompted current hearings did not reference or attach Judge DiSalle's April 13, 2011 order; Husband's petition referenced other filings but not that order; neither Master nor court should have to speculate about order that Husband now asserted formed basis of contempt allegations; in addition, Husband failed to direct court to precise complaint; instead, Husband provided only general statements regarding order of division of parties' personal property and Husband's repeated use of court intervention to distribute property; because Husband failed to set forth clear and concise basis for this issue, it is waived; Husband would have court go on "wild goose chase" in attempt to understand Husband's complaint about April 13, 2011 court order, when he did not preserve any issue regarding that order, did not identify that order in his petition for contempt, did not inform court in appropriate legal manner, and where Master's Report and Recommendation clearly provided sanction of contempt for complained-of violation; (2-3) court accepted Masters' opinions that Wife's actions caused unnecessary incident and assessed $5,000.00 fine for willful violation of court orders; Husband gave no reason to increase fine above that awarded, other than generalized, blanket statements, which did not serve as potential deterrent against future violations; Husband offered no alternative, suggested

amount of fine and actually seemed to be trying to redistribute marital estate as monetary fine; Master Smider awarded $4,750.00 in counsel fees to Husband and then deducted undisputed $300.00 which Husband owed to Wife; Husband failed to set forth factors required for award of attorney's fees and to apply factors to facts of this action, so he waived this claim; Husband comingled contempt and damages claims which made it difficult to allocate attorney billing entries; record revealed that Husband's legal counsel spent overwhelming majority of time on presentation of alleged damages claim, almost all of which were unsuccessful; Husband's claim for attorney's fees in amount close to $55,000.00 for contempt proceedings was unreasonable and excessive; recommended award of attorney's fees of $4,750.00 (less undisputed $300 owed to Wife) was far more appropriate; (4) Husband did not provide specific evidence of additional moving costs but again simply argued in generalities; no award for additional moving fees was warranted; (5) Husband presented only cost of replacement key to Master; Husband provided no evidence as to cost of associated labor; claim related to Audi key merited no additional relief; (6) gold chains and medallions had designated values allocated to Wife in equitable distribution; if Husband wants these items, then Husband must pay Wife corresponding money because she had been charged with their value; (7) Husband failed to prove his claim for damages to his property; Husband did not direct court to parts of record where these values were presented in any recognizable legal form; absent credible

evidence as to values of actual loss, award of additional monetary damages would be merely speculative). The record supports the court's decision, and we see no reason to disturb it. See Mrozek, supra. Accordingly, we affirm based on the trial court's opinion.

Order affirmed.

President Judge Emeritus Bender joins this memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2019

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CIVIL DIVISION

BETTY LOU COYLE,                    )
                                    )
          Appellee,                 )
                                    )
vs.                                 )        No. 2009-5253
                                    )
REED B. COYLE, III,                 )
                                    )
                                    )
          Appellant.                )

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

This matter is before the Trial Court ("Court") pursuant to Pa.R.A.P. 1925(a) regarding an appeal of its Amended Order dated January 18, 2018 ("Order") which denied Reed B. Coyle, III's ("Appellant") Exceptions to the Master's Report and Recommendation regarding Appellant's Petition for Contempt ("Petition"). The Petition contained allegations that Betty Lou Coyle ("Appellee") violated certain orders of the Court by stacking Appellant's personal property in the attached garage of the marital residence instead of permitting Appellant and his movers to identify, pack, and move the items and in not allowing Appellant access to the marital residence to possibly identify additional personal property belonging to him at the time of the proposed move. Appellant further alleged some items of personalty which belonged to Appellant were omitted from the items to be picked up and that many of the items of personalty were damaged.

These allegations along with Appellant's ancillary claims for moving/storage fees, attorney's fees, and penalties for Appellee's alleged contempt formed the basis of Appellant's Petition. Upon consideration of Appellant's Exceptions, the briefs of both parties and arguments thereon, the record, and the Master's Report and Recommendation, Appellant's Exceptions were

1

denied. Appellant timely filed his Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) on March 12, 2018. This Opinion is filed in support of the Court's denial of Appellant's Exceptions following his Appeal to the Superior Court.

## PROCEDURAL HISTORY

The procedural history of the underlying Divorce action is extensive, voluminous, and stretches to date over a nearly nine year period with many appearances in motions court and ten days or partial days of hearings before two Standing Masters in Divorce, as well as appeals to the Superior Court by the Appellant. The parties were divorced by Decree dated May 2, 2012.

The matter giving rise to Appellant's instant Exceptions are a result of a Petition for Contempt filed by Appellant on January 23, 2014 and it is that Petition which the Court must consider relative to the record and Appellant's exceptions.

The resulting Court Order of January 23, 2014 states "Defendant's Petition for Contempt is hereby referred to Master Eric Held. A hearing shall be scheduled on the earliest date available. A separate order shall issue with the hearing date and time."[1] That Court Order by the Honorable Judge Valarie Costanzo was a result of Appellant's contention that Appellee had violated Orders of Court of November 19, 2013 and an Amended Order (by consent) dated

---

[1] Appellant did not object to this matter being assigned to a Standing Master in Divorce either at the time of the entry of the Order, at any time during the proceedings before the Masters, by exception, or in Appellant's Statement of Matters Complained of on Appeal. In addition, Appellant filed a Petition for Special Relief on that same day which was denied by the court and is therefore not part of these proceedings. Master Smider does reference a Petition for Special Relief filed by Appellant on November 19, 2013 but it is for the purpose of notice to Appellee regarding the packing and moving of Appellant's personalty and that it resulted in Judge Gilman's order of the same date allowing Appellant, his assistants and the moving company to pack and retrieve his property from the former marital residence. As Master Smider points out, Judge Gilman's scheduled hearing resulting from that petition, scheduled for January 28, 2014, never took place. Again, it is the contents of Appellant's most current Petition for Contempt which forms the basis of these proceedings.

2

December 5, 2013. These are the court orders upon which Judge Costanzo's referral to the Master are based. These Orders primarily dealt with the retrieval from the former marital residence of personal property inuring to Appellant. The latter Order changed the date Appellant was to appear at the former marital residence to obtain his personalty.

The Court adopts the Report and Recommendation of Standing Divorce Master John Patrick Smider, Esquire, and in particular for purposes of this procedural aspect of this Opinion, highlights the sections of his Report designated as "Petitions and Referring Court Order" and "Procedural Background" which clearly set forth the genesis of the instant proceedings which ultimately were heard by two Standing Masters in Divorce. A Master's Report and Recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses because the Master has the opportunity to observe and assess the behavior and demeanor of the parties. Childress v. Bogosian, 12 A.3d 448, 455-56 (Pa. Super. Ct. 2011).

Former Divorce Master Eric J. Held, Esquire initiated the scheduling and the conducting of partial day hearings which resulted in at least five appearances before him. Upon Master Held's retirement, Master Smider took over the Master's responsibility for this proceeding. Master Smider conducted six full day (or nearly full day) hearings and issued an extensive Master's Report and Recommendation dated August 24, 2017, and filed of record on August 28, 2017.

Master Smider's Recommendation concluded that Appellee was in Contempt of Orders of Court of November 19, 2013 and December 5, 2013 and recommended that a fine be imposed against Appellee and in favor of Appellant in the amount of $5,000 and recommended an award of attorney's fees in favor of the Appellant in the amount of $4,750, and then deducted an

3

undisputed $300 that Appellant owed Appellee, for a net amount of $4,450 in attorney's fees to be paid by the Appellee. The Master did not agree with almost all of Appellant's damage claims, and thus awarded limited damages more fully discussed below (along with other parts of the Master's Recommendation). Appellee did not file Exceptions.

Appellant filed seven Exceptions to the Master's Report and Recommendation and after argument on the Exceptions following briefing by both parties, the Court denied all seven of Appellant's Exceptions by Amended Order dated January 18, 2018 (this Amended Order merely corrected the denial of the Exceptions of "Defendant" rather than "Plaintiff" from this Court's previous Order).

Appellant appealed the Order denying his Exceptions and therefore, on February 20, 2018, this Court issued an Order in accordance with Pa.R.A.P. 1925(b) directing Appellant to file and concurrently serve upon the undersigned a Concise Statement ("Statement") of the matters complained of on appeal. Appellant's statement was filed on March 12, 2018 and this Opinion follows.

## DISCUSSION

Appellant's Statement mirrors his seven Exceptions. The Court addresses each matter in the order raised by Appellant.

1. **Appellant complains that the Court abused its discretion in failing to find Appellee in contempt of Judge Disalle's Order of Court dated April 13, 2011.**

This divorce action was previously assigned to the Honorable John DiSalle of this court. In his Report and Recommendation which gave rise to Appellant's Exceptions, Master Smider exhaustively detailed and analyzed Appellant's Petition of January 23, 2014 ("Petition") setting forth precisely what was referred to Master Held. Appellant's Petition of that date does not refer to an Order of Court by Judge DiSalle dated April 13, 2011 which is nearly three years prior to

4

Appellant's Petition. Judge DiSalle's Order of that date simply orders the parties to divide the contents of the marital residence within thirty days of the date of the determination of the marital property by Master Held. In fact, Appellant's Petition references other filings but not that court order. This Petition forms the basis of the Judge Costanzo's referral of this matter to the Master and if Appellant failed to specifically reference or attach Judge DiSalle's Order, neither the Master nor the Court should be left to speculate about another court order which Appellant now asserts forms the basis of the alleged contempt.

The Petition consisted of sixteen paragraphs of averments, a "Wherefore clause" requesting relief, and approximately 130 pages of attached ancillary documents. The averments, the request for relief, and the attached documents do not indicate, nor attach, Judge DiSalle's Order. In addition, both in his Exceptions and his brief in support of Exceptions and Statement, Appellant fails to direct the Court to his precise complaint in this regard. Appellant only provides general statements that the parties were to divide their property as expressed by the order and that Appellant was required to seek court intervention on many occasions to get the personal property divided. Because Appellant has failed to clearly and concisely set forth the basis for this matter complained of, that matter is deemed waived.

As to any required further analysis of this complaint, should it be determined that Appellant has not waived this issue, the Court addresses it anyway. The gravamen of Appellant's Petition for Contempt and the resulting hearings and Report and Recommendation covers any perceived contempt by Appellee of the April 13, 2011 Order of Court which again, simply required the parties to divide their personal property. The proceedings before the Divorce Masters addressed this. Furthermore, Master Held filed a Report and Recommendation on November 17, 2011, some seven months after the April 13, 2011 Order. Appellant filed untimely

5

Exceptions to that Recommendation. The Exceptions were dismissed as being filed beyond the required time limit and Appellant did not file an appeal to the dismissal of those Exceptions. Because Appellant did not preserve the issue by timely filing Exceptions, any issue with the April 13, 2011 Order of Court is waived. Furthermore, Appellant filed a Petition for Special Relief on October 16, 2014, approximately three and one-half years after the April 13, 2011 Order and did not raise Judge DiSalle's Order at that time. That Petition led to an appeal to the Superior Court (No. 1842 WDA 2014) which affirmed the Court's order denying Appellant's Petition for Special Relief.

Appellant would have the Court go on the proverbial "wild goose chase" in an attempt to understand his complaint about the April 13, 2011 Order of Court when he did not preserve the issue, did not identify this Court Order in his Petition for Contempt, has not directed the Court in this regard in an appropriate legal manner, and when the instant Master's Report and Recommendation clearly provided a recommendation of Contempt for the complained of violation.

2. **Appellant complains that the Court abused its discretion in failing to impose a greater sanction against the Appellee for her contempt of Judge DiSalle's Order of Court dated April 13, 2011, Judge Gilman's Order of Court dated November 19, 2013 and the Amended Order of Court dated December 5, 2013.**

The personal property distribution is complete. Appellant does not complain that he is entitled to additional property. He essentially argues that he is entitled to additional monies representing his claim for damages, expenses incurred and for reimbursement of attorney's fees. The Court has reviewed the evidence and found that the $5,000 fine recommended by the Master is appropriate. The sanctions and the amount of a fine, if any, are within the sound discretion of the trial court. Christian v. Pa. Fin. Responsibility Assigned Claims Plan, 686 A.2d 1, 4 (Pa.

6

Super. Ct. 1996); McGovern v. Hospital Service Ass'n of Ne. Pa., 785 A.2d 1012 (Pa. Super. Ct. 2001).

The Court agrees with the opinion of both Masters that Appellee's actions caused an incident on the date of the proposed distribution of the personalty which was unnecessary. The Court also agrees that Appellee should be assessed a $5,000 fine because, in the opinion of the Court, she willfully violated the Court Order of November 19, 2013 (amended by the December 5, 2013 Court Order). Part of the rational in sanctioning a contemnor is to provide a penalty to dissuade the party from disobeying court orders in future regarding the subject action. Mrozek v. James, 780 A.2d 670, 674 (Pa. Super. Ct. 2001) (citing Goodman v. Goodman, 556 A.2d 1379, 1392 (1989)). Appellants remaining issues go to his monetary claims. There are no other court orders which the Appellee may violate. If Appellant is successful regarding the instant appeal, additional money damages would be awarded but Appellee would not be required to take any other action. An increased award, as with the current award, would be collectable against Appellee's assets but there would be no further distribution of assets. Certainly a party can attempt to delay the payment of a monetary award from a final order, but should that occur, it would be a separate proceeding subject to separate enforcement requirements.

Appellant has not shown any basis for increasing the subject fine above the $5,000. He has not stated a case for increasing the fine regarding this particular matter other than generalized blanket statements. Appellant has not situated his argument in the nature of additional deterrent against violating future orders.

In addition, Appellant offers no suggested amount of a fine and seems to attempt to establish a re-distribution of the marital estate in the nature of a monetary fine. For instance, Appellant states in his Brief in Support of Exceptions that Master Smider stated that Appellee

7

received approximately 1.5 million dollars in equitable distribution, approximately one-half of which was cash (Appellant's Brief at 8). Master Smider made no such determination. That position by Appellant posits that a much larger fine would take away part of Appellees equitable distribution and distribute it to Appellant. Contempt cannot be the basis to re-litigate equitable distribution.

3. **Appellant complains that the Court erred as a matter of law in failing to address the inaccurate calculation of attorney's fees expended by the Appellant due to Appellee's contempt of orders of court.**

Appellant claims that the entirety of his attorney's fees and costs incurred by him in the claimed amount of $54,978.31 should be paid by Appellee. Appellant states in his Brief in Support of Exceptions, "That amount has also been deemed reasonable on the record by the previous Master ..." (Appellant's Brief at 9). The previous Master made no such determination. Master Held only stated that the hourly rate is in line with what he has seen in Washington County (Transcript at 47 (May 21, 2014)). In addition, Appellant claims in his brief that the Master recommended an award of attorney's fees in the amount of $4,450. This is another inaccurate statement, as Master Smider awarded $4,750 and then deducted the $300 in attorney's fees which Appellant owed to Appellee and which the parties did not dispute. Appellant fails to set forth the factors required for an award of attorney's fees, apply the facts of this action to those factors and to provide an analysis of the same and therefore has waived this claim. However, as to any required analysis, the Court offers the following.

The factors to be considered in determining the reasonableness of the claimed attorney's fees is set forth in the case authority of In re Trust Estate of LaRocca, 246 A.2d 337, 339 (Pa. 1968).

8

- The amount of work performed and the character of services rendered: Appellant's legal counsel did expend time on the Contempt Petition referred to Master Held by order of Court of January 23, 2014. Master Smider clearly set forth his rationale for the subject award. The Contempt part of the action (whether Appellee knowingly violated an Order of Court with the intent to do so) was extremely straightforward and took up very little of the time of the proceedings. Appellant's counsel sought a recommendation of contempt which was successful. The vast majority of Appellant's counsel's time was spent on the damage claim.

- The difficulty of the problems involved: The pursuit of a finding of contempt was not a difficult process. The pursuit of a damage claim in this regard was only complicated by Appellant's utter lack of the establishment of values for his damage claim and/or that he did not carry his burden of proof regarding Appellee's responsibility for the vast majority of Appellant's perceived loss.

- The importance of the litigation and the amount of money or value of the property in question: The Court does not dispute the importance of the litigation. However, Appellant has failed to value the property in question other than an Audi key and perhaps a gold chain which required a set off.

- The degree of responsibility incurred: Appellant has no further responsibility to the Appellee or the Court. As to Appellee's responsibility, it is clear that Appellant has not carried his burden that Appellee is responsible for the overwhelming majority of the claimed damages.

- Whether the fund involved was created by the attorney: There is no dispute that there is no actual "fund" involved in Appellant's contempt claim and thus none was created by his legal counsel.

- The professional skill and standing of the attorney in the profession: Appellant provided no evidence in this regard.

- The results counsel was able to obtain: The overwhelming, vast majority of Appellant's claim did not bear fruit. The Court cannot begin to place values on the allegedly damaged or destroyed property because Appellant failed to properly assert values. Counsel was successful in a finding of contempt but little else was successful in this quixotic damage claim pursuit.

- The ability of the client to pay a reasonable fee for the services rendered: No specific evidence was provided by the Appellant in this regard. Instead, now by exception and appeal, Appellant relies on the equitable distribution scheme which is over five years old at the time of Master Smider's Report and Recommendation. Appellant's counsel made no inquiry into Appellee's ability to pay nearly $55,000 in claimed attorney fees which is not an insignificant amount of money. Still yet, the Master recommended an amount of $4,750 in attorney's fees, which is also not an insignificant amount of money and which Appellee has not excepted to and therefore, the Court has no basis in this regard to change the Master's recommendation.

- The amount of money or the value of the property in question: Very importantly, Appellant has failed to value the damaged property. He has only provided photographs of the property, but he has not provided any evidence of

10

the value of the property and/or the estimates of repair or replacement of the property. In fact, Appellant has made no effort during the almost nine years of litigation to prove the property's value and/or cost to repair or replace the property.

The Court has reviewed the record. During the hearings, Appellant mingled the contempt assertion and the damage claim to the extent that it is difficult to allocate many billing entries by counsel for Appellant as to damages (which were not proven) and contempt. Perhaps this action should have been the subject of an initial hearing on contempt and a subsequent hearing on damages which may have made the review of an award of attorney's fees easier. While the Master concluded that two days of hearings and preparation work (including for the Petition) would address the contempt portion of the proceedings and the limited damages recommended, that part could have taken less than two days or the twenty hours (at $200 per hour) indicated by the Master. Also, the Master did award an additional $750 for the preparation of and presentation of the petition before Judge Gilman which resulted in his order of November 19, 2013.

A review of the record reveals that the overwhelming majority of time spent by Appellant's legal counsel went to the presentation of the alleged damages claim with many parts of the proceeding being the subject of pictures, identifying items in the pictures which may have been damaged, and the location of certain items of personalty, almost all of which proved to be an unsuccessful pursuit.

In addition, Master Smider concluded, as does the Court, that there are a few key factual conclusions which can be made relative to the award of counsel fees. First, the mix-up regarding the December 4, 2013 scheduled meeting at legal counsel's office to allocate on paper the personal property distribution was merely a scheduling issue and therefore Appellee should not

11

pack and move the personal property designated to be his. When Appellant, his family, and the movers arrived at the residence, they discovered that his personal property had been moved into and stacked in the adjacent garage. It was Appellant's understanding that he and his movers would be provided access to the marital residence so that he could identify and have the movers pack his personal property. Appellant's evidence, expressed generally through testimony, was that the movers time at the former marital residence on the rainy pickup day took longer than expected because the personalty was stacked in the garage which did not allow for sufficient room to properly pack the personalty, such that the items had to be taken to the inside of the moving truck where the items could by properly packed for moving.

The court in Morin v. Brassington, 871 A.2d 844, 852 (Pa. Super. 2005), found that damages need to be proven with reasonable certainty. Appellant asserted through testimony that it would have been more efficient and less time consuming to have the movers pack the personalty in the house and then carry the items to the moving truck. However, Appellant failed to call any of the movers to testify about how much additional time, if any, was utilized because of the situation of the property in the garage. More importantly, Appellant failed to have his movers provide evidence of any additional cost incurred by Appellant in this regard. The law does not permit a damages award to be based on mere guesswork or speculation, but rather requires a reasonable basis to support such an award. Gillingham v. Consol Energy, Inc., 51 A.3d 841, 864 (Pa. Super. Ct. 2012). In his Brief in Support of Exceptions and at argument, Appellant has not pointed out the specific evidence of additional cost to him but again, simply argued in generalities in this regard. Accordingly, the Court cannot agree with Appellant and award him additional monies for excessive moving fees.

13

5. **Appellant complains that the Court abused its discretion in failing to award the entire amount of the cost of replacement key of the Audi due to Appellant's deliberate unauthorized seizure of Appellant's property.**

While the Master found that the missing Audi key was Appellee's fault, he determined that the evidence provided to the Master was only the cost of the replacement of the key itself and that no evidence was presented as to the cost of labor of coordinating the use of the new key with this automobile. Appellant again fails to provide the Court with any indication either in his brief or at argument where the labor cost was designated in the record. The Court cannot award monies where no evidence supports the claim.

6. **Appellant complains that the Court abused its discretion in failing to require Appellee to give Appellant his gold chains and medallions without a credit to Appellee, despite evidence presented by Appellant as to Appellee's deliberate conduct in withholding Appellant's rightful property.**

Appellant again fails to address the plain evidence in this regard. Both gold chains were allocated to Appellee in equitable distribution with designated values and therefore the value of the property inured to her. Master Smider confirms the award of the smaller chain to Appellee and therefore there would be no allocation of monies as Appellee was already charged with the value of this gold chain. Master Smider allocated the larger gold chain to Appellant if he wanted it, but indicated that his receipt of that item would cause a corresponding monetary credit to Appellee because she has been charged with the value of that item.

In his brief and at argument, Appellant fails to indicate why there is any factual or legal error on the Master's part in this regard. Instead, Appellant again speaks in general terms that "Defendant should not have to pay for his own jewelry" (Appellant's Brief at 15). That is not the case and the Court can find no basis to change the Master's determination.

14

In addition, the Appellant raised in his Brief in Support of Exceptions (but not in his Exceptions) issues involving medallions and a Rolex watch which he says formerly belonged to his father. Id. He now deletes from this claim by complaint the Rolex but again asserts a claim for missing medallions. The Master made his determination based on the credibility of the witnesses and the evidence presented and the Court will not disturb this determination. Furthermore, Appellant never raised these latter items in his Exceptions and therefore any claim regarding medallions and/or a Rolex watch are deemed waived.

**7. Appellant complains that the Court erred as a matter of law by failing to grant Appellant's request for monetary reimbursement of the value of any and all of Appellant's marital and pre-marital property as illustrated during trial that was destroyed and/or damaged by the Appellee due to her complete disregard of the Orders of Court in this matter.**

Again, as with Appellant's attorney fees claim, he fails to recognize hornbook law. In order to recover a claim for destruction or damages to property, the claimant must show not only that another party had a duty of care regarding the property and caused the destruction or damage but also the value of the property at the time of the loss or partial loss. Toro v. Fitness Int'l LLC, 150 A.3d 968, 976-77 (Pa. Super. Ct. 2016) (citing Estate of Swift by Swift v. Northeastern Hosp. of Phila., 690 A.2d 719, 722 (Pa. Super. Ct. 1997)). Appellant's position in this regard is perplexing at best. Both in Appellant's Brief in Support of Exceptions and at argument, Appellant did not direct the Court to the parts of the record where these values were presented in any recognizable legal form, if at all. It is not enough to simply say that the purchase price of the item was a certain amount and even that occurred on rare occasions in the Master's Hearings. The fundamental purpose of damages for an injury to or destruction of property by tortious conduct of another is to compensate injured party for actual loss suffered. Commw., Dept. of Transp. v. Estate of Crea, 483 A.2d 996 (Pa. Commw. Ct. 1977) (citing Peters v. Stroudsburg

Trust Co., 35 A.2d 341 (Pa. 1944)). Without credible evidence as to values of the loss, the Court cannot award monetary damages. Appellant would have the Master and the Court speculate in this regard.

It is also important to note that according to Appellant's specific language this Exception goes only to destroyed or damaged items of personalty and not missing items should Appellant chose to argue about "missing items" on appeal. Appellant did not except to the Master's determination regarding missing items of personalty.

## **CONCLUSION**

For the reasons set forth above, the Court respectfully submits that the Amended Order of the Court dated January 18, 2018 should be affirmed and Appellant's appeal dismissed.

DATE:

4/10/18

BY THE COURT:

Brandon P. Neuman, Judge

16